STATE of Missouri, Respondent,

v.

Douglas G. HENKE, Appellant.

No. WD 47413.

Missouri Court of Appeals,
Western District.

July 11, 1995.

Patricia A. Richter, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, P.J., and LOWENSTEIN and ELLIS, JJ.

ULRICH, Presiding Judge.

Douglas Henke was convicted on December 9, 1992, of assault in the first degree, § 565.050, RSMo1994, and armed criminal action, § 571.015.1, RSMo1994, following a jury trial. He was sentenced to concurrent sentences of 30 years imprisonment for assault and 40 years imprisonment for armed criminal action.

On May 28, 1993, Mr. Henke filed his *pro se* motion for postconviction relief pursuant to Rule 29.15. An amended motion was filed on Mr. Henke's behalf by appointed counsel. In his amended motion, Mr. Henke alleged that his trial counsel was ineffective in failing to timely endorse a defense witness, Dr. William O'Connor. Although Dr. O'Connor was permitted to testify, Mr. Henke claimed the failure to timely endorse Dr. O'Connor prevented him from being permitted to testify that Mr. Henke suffered from post-traumatic stress disorder as a result of the shooting for which he was prosecuted which constituted evidence that he did not have the requisite intent to commit assault in the first degree.

Additionally, Mr. Henke alleged that trial counsel was ineffective for failing to object

during closing argument to the prosecutor's demonstration of how Mr. Henke was holding the shotgun that fired, severely injuring the victim. He claimed no facts were in evidence to support the demonstration and, thus, it was prejudicial and objectionable. Following an evidentiary hearing, the motion court entered its order, together with findings of fact and conclusions of law, overruling Mr. Henke's Rule 29.15 motion.

Mr. Henke appeals the judgment of conviction and the denial of his motion for postconviction relief. The judgment of conviction and the order denying the Rule 29.15 motion are affirmed.

On the evening of February 3, 1992, William Gallagher and Jimmy Cowles were at a tavern near Marshall when Pam Brown invited them to a party at her house. They arrived at Ms. Brown's house in Marshall at approximately 11:00 p.m. to find only Ms. Brown, Ms. Brown's sister, and her sister's husband. About ten minutes after their arrival, Mr. Henke exited the bedroom and asked Mr. Gallagher and Mr. Cowles to leave. Mr. Gallagher agreed to leave but wanted to use the bathroom first. Mr. Cowles told Mr. Henke, "when the lady of the house asks me to leave, I'll leave."

Mr. Henke then left the house and got his shotgun from his truck. Mr. Gallagher and Mr. Cowles were leaving the house just as Mr. Henke returned with the shotgun. As Mr. Cowles stepped onto the porch, he felt the shotgun against his chest and backed up a couple of steps. He told Mr. Henke, "If you're man enough to pull the trigger, pull it." Mr. Henke slowly started lowering the shotgun and, as it reached the level of Mr. Cowles' groin, he pulled the trigger discharging the weapon. Mr. Cowles dropped to the ground. Mr. Henke then turned to Mr. Gallagher and said, "Get him out of here or you are next." He also told Mr. Gallagher that "it was a blank" and that Mr. Cowles would be alright. Mr. Gallagher ran to his car, drove to a nearby convenience store, and called the county sheriff's department.

Mr. Henke and Ms. Brown fled from the scene of the shooting. They drove away in Mr. Henke's truck. After driving a few miles, Mr. Henke stopped the vehicle and threw the shotgun into weeds. The couple returned to Marshall where Mr. Henke was arrested by the Marshall police. He told police officers that he had been in Blackburn all night at a party, and he asked why he was being arrested. Mr. Henke appeared arrogant and devoid of remorse.

Mr. Cowles was rushed to a local hospital and, due to the severity of his injuries, was transferred by helicopter to the University of Missouri–Columbia Medical Center. He had suffered a shotgun wound to his suprapubic region which resulted in the amputation of both legs. Doctors also performed a permanent colostomy, and Mr. Cowles was left with no function in his genitals.

Mr. Henke testified that he was carrying his shotgun into the house when it went off accidentally. He said that he did not pull the trigger intentionally and that he thought the shotgun was unloaded.

Dr. William O'Connor, a clinical psychologist hired by the defense to examine Mr. Henke, testified at trial that Mr. Henke suffered from "generalized anxiety disorder with some post-traumatic features" as a result of the shooting.

### Ineffective Assistance of Counsel

In points one and two, Mr. Henke claims that the motion court erred in denying his Rule 29.15 motion for postconviction relief based on ineffective assistance of counsel. He asserts that his trial counsel was ineffective (1) in failing to object to the prosecutor's demonstration during closing arguments and (2) in failing to timely endorse a witness.

Appellate review of the denial of a postconviction motion is limited to whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(j); *State v. Nolan*, 872 S.W.2d 99, 104 (Mo. banc 1994). Findings and conclusions are clearly erroneous only if a review of the entire record leaves the appellate court with the definite and firm impression that a mistake has been made. *Nolan*, 872 S.W.2d at 104.

To prevail on a claim of ineffective assistance of counsel, a convicted defendant

must show that (1) his attorney's performance was deficient in that he failed to exercise the customary skill and diligence that a reasonably competent attorney would manifest under similar circumstances, and (2) the deficient performance prejudiced the defense. *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). "Prejudice exists only where trial counsel's acts or failures to act are outcome determinative." *State v. Harris,* 870 S.W.2d 798, 814 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). The movant must show there is a reasonable probability that, but for his attorney's unprofessional errors, the result of the proceeding would have been different. *Id.* Furthermore, the movant must overcome the presumption that counsel is competent. *Id.*

### A. Failure to Object to Prosecutor's Closing Argument

Mr. Henke claims, in his first point on appeal, that his counsel was ineffective for failing to object to the prosecutor's demonstration during closing argument. The prosecutor demonstrated how he believed Mr. Henke held the weapon during the shooting. Mr. Henke argues that the demonstration was unsupported by the evidence because it was contrary to his version of the facts and no witnesses at trial specifically testified to how he was holding the weapon.

A trial court has broad discretion in controlling closing arguments and counsel is given wide latitude in making summations. *State v. Martin,* 852 S.W.2d 844 (Mo.App. 1992). A prosecutor is allowed to argue the evidence and all reasonable inferences from the evidence during closing arguments. *State v. Harris,* 870 S.W.2d 798, 814 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). He has a right to draw any inferences from the evidence which he believes in good faith are justified. *Id.*

At trial, both Mr. Cowles and Mr. Gallagher testified that Mr. Henke was pointing or holding the shotgun to Mr. Cowles chest. Furthermore, Mr. Gallagher testified that as Mr. Henke lowered the shotgun, his finger pulled the trigger. The evidence supported an inference that Mr. Henke deliberately pointed the shotgun at Mr. Cowles. The argument and demonstration was, therefore, permissible. Counsel cannot be found ineffective for failing to make a nonmeritorious objection. *State v. Pagano,* 882 S.W.2d 326 (Mo.App.1994).

The first point is denied.

### B. Failure to Timely Endorse Expert Witness

As his second point, Mr. Henke claims his counsel was ineffective for failing to timely endorse Dr. William O'Connor. He argues that the late endorsement prompted the trial court to refuse to allow the expert witness psychologist to testify that he, Mr. Henke, did not have the requisite intent to shoot Mr. Cowles because he experienced post-traumatic stress disorder as a result of the shooting. The essence of his expert opinion testimony on this point would have been that Mr. Henke's conduct, beginning immediately after the shooting, evinced that Mr. Henke did not intentionally shoot Mr. Cowles. The court did not permit this testimony because the late endorsement did not permit the State sufficient time to prepare for it by consulting and obtaining for trial testimony an expert of its choice.

To prevail on a claim of ineffective assistance of counsel based on trial counsel's failure to timely endorse a witness, movant must demonstrate what the substance of the witness' purported testimony would have been and how it would have aided his defense. *State v. Belcher,* 856 S.W.2d 113, 117 (Mo.App.1993). A court may examine the prejudice to a defendant resulting from ineffective counsel without first looking into counsel's performance. *State v. Villa–Perez,* 835 S.W.2d 897, 904 (Mo. banc 1992).

Mr. Henke was not prejudiced by his counsel's failure to timely endorse Dr. O'Connor. Mr. Henke's defense was based on the theory that the shooting was accidental not intentional. In fact, he testified at trial that the shotgun discharged accidentally. Evidence adduced at trial, however,

showed that Mr. Henke intended to shoot Mr. Cowles. Mr. Gallagher, a witness to the shooting, testified that he saw Mr. Henke point the shotgun at Mr. Cowles and pull the trigger of the shotgun. At trial, Mr. Henke admitted pulling the trigger. Other evidence showed that Mr. Henke threatened Mr. Gallagher after the shooting, fled the scene, and attempted to throw away the shotgun. This evidence supported the State's theory that Mr. Henke intentionally shot Mr. Cowles and tended to show consciousness of guilt. *See State v. White,* 870 S.W.2d 869, 875 (Mo.App.1993); *State v. Bragg,* 867 S.W.2d 284, 291 (Mo.App.1993); *State v. Allison,* 845 S.W.2d 642, 646 (Mo.App.1992). There is no reasonable probability that, had Dr. O'Connor been allowed to testify regarding post-traumatic stress and its effect on intent, the result would have been different.

Mr. Henke was not denied effective assistance of counsel because his defense was not prejudiced by counsel's failure to timely endorse Dr. O'Connor. The motion court's findings and conclusions were not clearly erroneous and it did not err in denying Mr. Henke's Rule 29.15 motion for postconviction relief.

The second point is denied.

### Request for Continuance

In his third point, Mr. Henke alleges that the trial court abused its discretion in refusing to grant his request for a continuance to review the medical records of Mr. Cowles. He claims that the records were not timely provided by the state and that they contained prior impeaching statements made by Mr. Cowles to the medical staff.

The trial court has broad discretion in the decision to grant or deny a continuance. *State v. Chambers,* 891 S.W.2d 93, 100 (Mo. banc 1994). "A very strong showing is required to prove abuse of that discretion; the party requesting the continuance must show prejudice." *Id.* at 100–101.

Mr. Henke argues that the medical records contained important impeaching information that he was entitled to discover and present as evidence in his defense. He, however, does not state what information would have been discovered by a continuance and investigation of the records or how the information would have assisted in his defense. He has failed to show how he was prejudiced by the court's denial of a continuance.

Point three is denied.

The judgment of conviction and the order denying the Rule 29.15 postconviction motion are affirmed.

All concur.