STATE of Missouri, Respondent,

v.

Tyrone COOPER, Appellant.

No. SC 87787.

Supreme Court of Missouri,
En Banc.

Feb. 27, 2007.

Jeremiah W. (Jay) Nixon, Atty. Gen., Roger W. Johnson, Assistant Attorney General, Jefferson City, for respondent.

Margaret M. Johnston, Office of the Public Defender, Columbia, for appellant.

STEPHEN N. LIMBAUGH, JR., Judge.

Defendant Tyrone Cooper appeals from the judgment entered upon his conviction following a jury trial for the class B felony of burglary in the first-degree in violation of section 569.160, RSMo 2000. Cooper was sentenced as a prior and persistent offender to life imprisonment. On appeal, Cooper argues the trial court plainly erred in submitting Instruction No. 5 to the jury because the instruction did not contain all of the essential elements of the offense charged, and the missing element—that Cooper entered the victim's house "unlawfully"—was a disputed fact at trial. After opinion by the Court of Appeals, Eastern District, this Court granted transfer. Mo. Const. art. V, sec. 10. Having determined that the trial court plainly erred in submitting Instruction No. 5, Cooper's conviction of first-degree burglary is reversed, and the case is remanded.

## I. Factual Background

The facts, which this Court reviews in the light most favorable to the verdict, *State v. Gill*, 167 S.W.3d 184, 187 (Mo. banc 2005), are as follows: On October 25, 2003, Overland, Missouri, police responded to a call reporting gunshots and scuffling from the house next door to the caller. At trial, Cooper testified that his nephew told him he had purchased some defective Ecstasy from Joel Busby, so the two of them went to Busby's house in order to get his nephew's money back or to have the drugs replaced. At approximately 1:30 a.m., they parked their car across the street from Busby's house and waited for about fifteen minutes until Busby returned home.

According to Busby, when he returned home, a masked man wearing gloves and carrying a pistol, later identified as Cooper, rushed at him from the side of his house. In his haste to get inside, Busby broke off his key in the door and accidentally turned the deadbolt too early, preventing the door from closing. Cooper was able to get his arm and shoulder through the doorway and kick the door open. While Cooper was trying to get through the door, he accidentally discharged the gun, shooting himself in the arm. As he gained entry into Busby's house, he then pointed the gun at Busby and fired, but Busby had deflected the gun so that the bullet only grazed his head. After the second shot was fired, the gun jammed, and although Cooper later repeatedly tried to pull the trigger, it would not fire. With the gun pointed at Busby, Cooper demanded Busby's car keys and repeatedly asked him if he wanted to die. A struggle ensued, with both men trying to gain control of the gun. At some point during the fight, Busby gained control of the gun, and after he, too, unsuccessfully attempted to fire it, he beat Cooper in the head with it 40 or 50 times while his pit bull repeatedly bit Cooper in the legs and face. The police arrived as Busby was dragging Cooper, who was still struggling, out of the house, screaming that Cooper was trying to kill him.

Police officers testified that a walkie-talkie, handcuffs, and duct tape were found

on Cooper's person at the time of the arrest and a gun holster was found behind his house. There was also testimony that the following day, a man, later identified as Cooper's nephew, dumped a bag containing handcuffs, gloves, bandanas, and a walkie-talkie in a dumpster not far from Busby's house.

A jury found Cooper guilty of burglary in the first-degree, section 569.160, but not guilty of the other offenses charged, assault in the first-degree, section 565.050, and armed criminal action, section 571.015. The trial court sentenced Cooper as a prior and persistent offender to life imprisonment.

## II. Standard of Review

■ Rule 28.02(f) provides that the failure to give an instruction in accordance with the MAI–CR is error, the prejudicial effect of which must be judicially determined. In order to assign the giving of an instruction as error, Rule 28.03 requires a defendant to both make a specific objection during trial and raise the issue in his motion for new trial. Because Cooper failed to object to Instruction No. 5 and raise this issue in a motion for new trial, this Court reviews for plain error. Rule 30.20; *State v. Taylor*, 134 S.W.3d 21, 28 (Mo.2004). For instructional error to rise to the level of plain error, appellant must demonstrate that the trial court so misdirected or failed to instruct the jury as to cause manifest injustice or miscarriage of justice. *Id.* It must be apparent to the appellate court that the instructional error affected the jury's verdict. *Id.*

## III. First–Degree Burglary Instruction

■ Cooper's sole argument on appeal is that the trial court plainly erred in submitting Instruction No. 5, the verdict director for first-degree burglary, because it did not contain all of the essential ele-

ments of the offense charged and the missing element, that Cooper knowingly entered Victim's house "unlawfully," was disputed at trial. Cooper argues this omission resulted in manifest injustice and a miscarriage of justice because the improper burglary instruction very likely affected the jury's verdict.

Instruction No. 5 provided:

As to Count I [Burglary], if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about October 26, 2003, in [St. Louis, Missouri], the defendant knowingly entered in an inhabitable structure at [Busby's address] and possessed by [Busby], and

Second, that defendant did so for the purpose of committing the crime of assault therein, and

Third, that while the defendant was in the inhabitable structure he was armed with a deadly weapon, then you will find the defendant guilty under Count I of burglary in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, assault means purposely or knowingly placing or attempting to place another in fear of physical harm.

This instruction is identical to MAI–CR 323.25, the burglary in the first-degree instruction, except that it omits the word "unlawfully" from the phrase "defendant knowingly entered unlawfully."

■ "A verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of [the] offense charged." *State v. Doolittle*, 896 S.W.2d 27, 30 (Mo. banc

1995); *State v. Krause,* 682 S.W.2d 55, 56 (Mo.App.1985) (reversing defendant's conviction for first-degree burglary because verdict director omitted the word "knowingly"). A violation of due process arises when an instruction relieves the State of its burden of proving each and every element of the crime and allows the State to obtain a conviction without the jury deliberating on and determining any contested elements of that crime. *State v. Ferguson,* 887 S.W.2d 585, 587 (Mo. banc 1994). A verdict directing instruction that omits an essential element rises to the level of plain error if the evidence establishing the omitted element was seriously disputed. *State v. White,* 92 S.W.3d 183, 192 (Mo.App. 2003). On the other hand, if the evidence establishing the omitted element was not in dispute, the jury's verdict would not have been affected and no plain error relief need be given. *See, e. g., State v. Nolan,* 872 S.W.2d 99, 103 (Mo. banc 1994); *State v. Busch,* 920 S.W.2d 565, 569–70 (Mo.App.1996).

■ Under section 569.160, "a person commits the crime of burglary in the first degree if he knowingly enters *unlawfully* or knowingly remains *unlawfully* in a building or inhabitable structure for the purpose of committing a crime therein." (emphasis added). Thus, the State had the burden of proving, beyond a reasonable doubt, that Cooper not only knowingly entered Busby's house for the purpose of committing assault therein, but also that his entry into Busby's house was unlawful. Therefore, there is no doubt that the omission of "unlawfully" in Instruction No. 5 was erroneous under Rule 28.02(c). The only question, then, is whether the evidence establishing Cooper's entry to the house was seriously disputed. In that regard, "a person 'enters unlawfully or remains unlawfully' in or upon premises when he is not licensed or privileged to do so." Sec. 569.010(8). When a person has the consent of a resident to enter the home, he is not guilty of burglary, regardless of what other crimes he may have committed therein. *State v. Chandler,* 635 S.W.2d 338, 341 (Mo. banc 1982).

Whether Cooper entered Busby's house "unlawfully" was indeed in serious dispute during trial. While Busby testified that Cooper forced his way into the house, Cooper testified that he talked with Busby at his front door and that Busby gestured for him to go inside, and further, that just as he was in Busby's doorway, he turned, saw that Busby had a gun drawn, reached for the gun, and the struggle ensued. While this Court acknowledges that there are facts in the record that could persuade a jury that Cooper entered Busby's home forcefully and without Busby's consent, and thus unlawfully, the jury was not asked to make that determination. It may well be that the jury would have determined that despite the fact that Cooper entered Busby's house with the purpose of committing an assault, the entry itself was made with Busby's consent, and thus lawfully. There is simply no way to know. Moreover, the concern is even greater given the fact that the jury failed to convict Cooper on the other two offenses charged, which is indicative that the jury disbelieved or found insufficient at least some of the evidence presented by the State.

■ Nonetheless, the State argues that "the jury, by finding that [Cooper] entered for the purpose of assaulting [Busby], necessarily rejected [Cooper's] story that he was innocently visiting just to talk with [Busby.]" As the state explains, "[e]ven if the jury did not believe [Busby's] entire account, since they found that [Cooper] went into [Busby's] home for the purpose of committing assault, it is very unlikely that they would have found that the entry was lawful." The State concludes that it is

improbable that the omission of the word "unlawfully" from the verdict director affected the verdict. Based on this reasoning, however, the State would be impermissibly relieved of its burden of proving all of the essential elements of an offense. The State's argument would also render an essential element of the offense superfluous, as a conviction for burglary requires distinct findings of both unlawful entry and intent to commit a crime therein.

The State also cites *State v. Busch*, 920 S.W.2d at 565, and *State v. Nolan*, 872 S.W.2d at 99, in support of the argument that the omission of an essential element in this case did not affect the jury's verdict. These cases are inapposite. In both *Busch* and *Nolan*, the omission did not affect the jury's verdict because, unlike the case at hand, the evidence establishing the missing element was not in dispute. *Busch* was a first-degree murder case in which the verdict director failed to include the element of deliberation, and the court held there was no plain error because "[d]efendant did not dispute the issue of deliberation, rather, he implied he did not participate in the murder at all." 920 S.W.2d at 570. In *Nolan*, another burglary case, the verdict director did not specify the crime that the defendant intended to commit in entering a premises unlawfully, but stated only that defendant intended to commit "a crime." 872 S.W.2d at 102. This Court held that there was no plain error because the defense, in pertinent part, was that defendant did not intend to commit any crime at all, thus obviating the need to specify the crime. *Id.* at 103. Thus, in neither *Busch* nor *Nolan* would the mistake in omitting an element have affected the jury's verdict.

For the foregoing reasons, this Court holds that the omission of the essential element "unlawfully" in Instruction No. 5 was plainly erroneous, resulting in manifest injustice. The judgment is reversed, and the case is remanded.

All concur.